EXHIBIT A

# **GENERAL STAFFING AGREEMENT**

FrontierBPM, Inc., with its principal office located at 325 Sentry Parkway, Building 5 West – Suite 200, Blue Bell, PA 19422 (the "Company"), and IT Trailblazers, LLC, with its principal office located at 2050 Route 27, Suite 203, North Brunswick, NJ 08902 (the "Vendor") agree to the terms and conditions set forth in this General Staffing Agreement (the "Agreement").

## **RECITALS**

Company desires to retain Vendor for the placement of experienced personnel ("Assigned Employees") with verifiable experience in a technical discipline that is desirable to the Company.

Vendor warrants that it has the professional knowledge, expertise and experience to furnish such Assigned Employees, and seeks to provide such to the Company.

Vendor agrees to provide Assigned Employees to Company on the terms and conditions set forth herein.

## **AGREEMENT**

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

**Vendor's Duties and Responsibilities**

1. Vendor will:

    a.  Recruit, screen, interview, verify and assign its personnel ("Assigned Employees") to perform the type of work described on Exhibit "A" attached hereto, under Company's supervision at the location specified on Exhibit "A" of this respective Agreement; and,

    b.  Pay Assigned Employees' wages and provide them with the benefits that Vendor offers to them, if any. Pay, withhold, and transmit payroll taxes; provide unemployment insurance, general liability insurance, registry bond and workers' compensation benefits; and handle unemployment and workers' compensation claims involving Assigned Employees; and,

    c.  Solely at the request of the Company, make reasonable efforts to provide a similarly qualified replacement in case an Assigned Employee does not report to work or quits; and,

    d.  Require Assigned Employees to sign agreements as set forth on Exhibit "B" attached here to acknowledging that they are not entitled to holidays, vacations, disability benefits, insurance, pensions, or retirement plans, or any other benefits offered or provided by Company; and,

    e.  Require all Assigned Employees to sign confidentiality and non-disclosure agreements as set forth on Exhibit "C" attached hereto before they begin their assignments to Company.  Additional documents may be required to be signed by the Assigned Employee as dictated by the Company.



PROPRIETARY AND CONFIDENTIAL        IT TRAILBLAZERS / FRONTIERBPM                PAGE 1

**Company's Duties and Responsibilities**

2. Company will:

   a. Properly supervise Assigned Employees performing its work and be responsible for its business operations, products, services, and intellectual property;

   b. Properly supervise, control, and safeguard its premises, processes, and systems;

   c. Provide Assigned Employees with a safe work site and provide appropriate information, training and project support;

   d. Provide Assigned Employee with a laptop computer and any other required computer devices necessary for Assigned Employee to perform the work defined in Exhibit A.

   e. Exclude Assigned Employees from Company benefit plans, policies, and practices, and not make any offer or promise relating to Assigned Employees' compensation or benefits; and

   f. Not entrust Assigned Employees with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables.

**Direct Placement**

3. A Direct Placement is a situation where the Vendor is hired by Company as a recruiter to identify and pre-screen a candidate (the "Referee") for a position with the Company, who may then be employed directly by the Company, without regard to the previous relationship of the Referee to the Vendor.

4. In case of a Direct Placement, the provisions of article 1(b) of the Agreement do not apply.

5. A Direct Placement is considered successfully completed upon the completion of the fifteenth day (15th) day of the employment of the Referee with the Company, following which the Vendor will invoice the Company for an agreed-upon fee.

6. Vendor and Company may negotiate a fee if Company is interested in directly hiring an Assigned Employee. However, nothing in this Agreement mandates that an Assigned Employee become a Direct Placement to the Company or End Client.

**Payment Terms, Bill Rates, and Fees**

7. Company will pay Vendor for its performance at the rates set forth on Exhibit "A" in this Agreement.  Vendor will invoice Company for services provided under this Agreement on a monthly basis. Payment terms are net 30-days on receipt of invoice. Invoices not paid within 30 days from receipt of the invoice will be considered past-due. Past-due invoices will be charged a fee of 1.5% per month until paid. Invoices will be supported by signed time sheets or other agreed-upon documenting time worked by the Assigned Employees. Company signature or other agreed method of approval of the work time submitted for Assigned Employees certifies that the documented hours are correct and authorizes Vendor to bill Company for those hours.  If a portion of any invoice is disputed, Company will pay the undisputed portion upon receipt of the invoice.



8. Assigned Employees are presumed to be non-exempt from laws requiring premium pay for overtime (OT), holiday work, or weekend work. Vendor will only charge Company special rates for premium work time only when an Assigned Employee's work on assignment to Company, viewed by itself, would legally require premium pay and Company has authorized, directed, or allowed the Assigned Employee to work such premium work time, with prior written approval from Company.

**Confidential Information**

9. Both Parties may receive information that is proprietary or confidential to the other party or its affiliated companies and their clients. Both parties agree to hold such information in strict confidence and not to disclose such information to third parties or to use such information for any purpose whatsoever other than performing under this Agreement or as required by law. No knowledge, possession, or use of Company's confidential information will be imputed to Vendor as a result of Assigned Employees' access to such information.

**Cooperation**

10. The parties agree to cooperate fully and to provide assistance to the other party in the investigation and resolution of any complaints, claims, actions, or proceedings that may be brought by or that may involve Assigned Employees.

**Indemnification and Limitation of Liability**

11. To the maximum extent permitted by law, Vendor will defend, indemnify, and hold Company and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by Vendor's breach of this Agreement; its failure to discharge its duties and responsibilities set forth in Section 1; or the gross negligence, or willful misconduct of Vendor or Vendor's officers, employees, or authorized agents in the discharge of those duties and responsibilities.

12. To the extent permitted by law, Company will defend, indemnify, and hold Vendor and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by Company's breach of this Agreement; its failure to discharge its duties and responsibilities set forth in Section 2; or the negligence, gross negligence, or willful misconduct of Company or Company's officers, employees, or authorized agents in the discharge of those duties and responsibilities.

13. ALL WARRANTIES, CONDITIONS, REPRESENTATIONS, INDEMNITIES AND GUARANTEES, WHETHER EXPRESS OR IMPLIED, ARISING BY LAW, CUSTOM, PRIOR ORAL OR WRITTEN STATEMENTS BY STAFFING FIRM OR OTHERWISE (INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANT ABILITY OR FITNESS FOR PARTICULAR PURPOSE) ARE HEREBY OVERRIDDEN, EXCLUDED AND DISCLAIMED. STAFFING FIRM MAKES NO ASSURANCE AS TO THE RESULTS OF ITS SERVICES, AND STAFFING FIRM IS TO BE PAID FOR SERVICES RENDERED IRRESPECTIVE OF THE RESULTS OF SUCH SERVICES.

14. NEITHER PARTY SHALL BE LIABLE FOR OR BE REQUIRED TO INDEMNIFY THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, SPECIAL, PUNITIVE, OR LOST PROFIT DAMAGES THAT ARISE IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION (WHETHER IN CONTRACT,

TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE) AND REGARDLESS OF HOW CHARACTERIZED, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

15. As a condition precedent to indemnification, the party seeking indemnification will inform the other party within five (5) business days after it receives notice of any claim, loss, liability, or demand for which it seeks indemnification from the other party; and the party seeking indemnification will cooperate in the investigation and defense of any such matter.

**Miscellaneous**

16. Provisions of this Agreement, which by their terms extend beyond the termination or nonrenewal of this Agreement, will remain effective after termination or nonrenewal.

17. No provision of this Agreement may be amended or waived unless agreed to in a writing signed by the parties.

18. Each provision of this Agreement will be considered severable, such that if any one provision or clause conflicts with existing or future applicable law or may not be given full effect because of such law, no other provision that can operate without the conflicting provision or clause will be affected.

19. This Agreement and the exhibits attached to it contain the entire understanding between the parties and supersede all prior agreements and understandings relating to the subjectmatter of the Agreement.

20. The provisions of this Agreement will inure to the benefit of and be binding on the parties and their respective representatives, successors, and assigns.

21. The failure of a party to enforce the provisions of this Agreement will not be interpreted as a waiver of any provision or the right of such party thereafter to enforce each and every provision of this Agreement.

22. Neither Party is permitted to transfer or assign this Agreement without the prior written consent from the other Party.

23. Any notice or other communication will be deemed to be properly given only when sent via the United States Postal Service or a nationally recognized courier, addressed as shown on the first page of this Agreement.

24. Neither party will be responsible for failure or delay in performance of this Agreement if the failure or delay is due to labor disputes, strikes, fire, riot, war, terrorism, acts of God, or any other causes beyond the control of the nonperforming party.

25. Termination of this Agreement shall not be effective with respect to any placed Assigned Employees until their placements are terminated.

**Term of Agreement**

26. This Agreement will be for a term of 12 months from the first date on which both parties have executed it. This Agreement may be terminated by either party upon 15 days' written notice to the other party, except that, if a party becomes bankrupt or insolvent, discontinues operations, or fails to make any payments as required by the Agreement, either party may



terminate the agreement upon 72 hours written notice. Unless the Agreement is cancelled or a renegotiation notice is sent 30 days prior to the Agreement's expiration date, the Agreement will be renewed automatically upon expiration for an additional 12-month term.

Authorized representatives of the parties have executed this Agreement below to express the parties' agreement to its terms.

| FRONTIERBPM, INC. | IT TRAILBLAZERS, LLC |
|---|---|
| *Theodore Sak* (signature) | *Roberts* (signature) |
| Signature | Signature |
| Theodore Sak | Shankar Narayanan. R |
| Printed Name | Printed Name |
| President | Senior Executive Contracts |
| Title | Title |
| January 10, 2017 | 01/10/2017 |
| Date | Date |