# **GENERAL STAFFING AGREEMENT**

FrontierBPM, Inc., with its principal office located at 325 Sentry Parkway, Building 5 West – Suite 200, Blue Bell, PA 19422 (the "Company"), and IT Trailblazers, LLC, with its principal office located at 2050 Route 27, Suite 203, North Brunswick, NJ 08902 (the "Vendor") agree to the terms and conditions set forth in this General Staffing Agreement (the "Agreement").

## **RECITALS**

Company desires to retain Vendor for the placement of experienced personnel ("Assigned Employees") with verifiable experience in a technical discipline that is desirable to the Company.

Vendor warrants that it has the professional knowledge, expertise and experience to furnish such Assigned Employees, and seeks to provide such to the Company.

Vendor agrees to provide Assigned Employees to Company on the terms and conditions set forth herein.

## **AGREEMENT**

NOW, THEREFORE, for valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties agree as follows:

**Vendor's Duties and Responsibilities**

1. Vendor will:

    a. Recruit, screen, interview, verify and assign its personnel ("Assigned Employees") to perform the type of work described on Exhibit "A" attached hereto, under Company's supervision at the location specified on Exhibit "A" of this respective Agreement; and,

    b. Pay Assigned Employees' wages and provide them with the benefits that Vendor offers to them, if any. Pay, withhold, and transmit payroll taxes; provide unemployment insurance, general liability insurance, registry bond and workers' compensation benefits; and handle unemployment and workers' compensation claims involving Assigned Employees; and,

    c. Solely at the request of the Company, make reasonable efforts to provide a similarly qualified replacement in case an Assigned Employee does not report to work or quits; and,

    d. Require Assigned Employees to sign agreements as set forth on Exhibit "B" attached here to acknowledging that they are not entitled to holidays, vacations, disability benefits, insurance, pensions, or retirement plans, or any other benefits offered or provided by Company; and,

    e. Require all Assigned Employees to sign confidentiality and non-disclosure agreements as set forth on Exhibit "C" attached hereto before they begin their assignments to Company.  Additional documents may be required to be signed by the Assigned Employee as dictated by the Company.

**Company's Duties and Responsibilities**

2. Company will:

    a.  Properly supervise Assigned Employees performing its work and be responsible for its business operations, products, services, and intellectual property;

    b.  Properly supervise, control, and safeguard its premises, processes, and systems;

    c.  Provide Assigned Employees with a safe work site and provide appropriate information, training and project support;

    d.  Provide Assigned Employee with a laptop computer and any other required computer devices necessary for Assigned Employee to perform the work defined in Exhibit A.

    e.  Exclude Assigned Employees from Company benefit plans, policies, and practices, and not make any offer or promise relating to Assigned Employees' compensation or benefits; and

    f.  Not entrust Assigned Employees with unattended premises, cash, checks, keys, credit cards, merchandise, confidential or trade secret information, negotiable instruments, or other valuables.

**Direct Placement**

3.  A Direct Placement is a situation where the Vendor is hired by Company as a recruiter to identify and pre-screen a candidate (the "Referee") for a position with the Company, who may then be employed directly by the Company, without regard to the previous relationship of the Referee to the Vendor.

4.  In case of a Direct Placement, the provisions of article 1(b) of the Agreement do not apply.

5.  A Direct Placement is considered successfully completed upon the completion of the fifteenth day (15th) day of the employment of the Referee with the Company, following which the Vendor will invoice the Company for an agreed-upon fee.

6.  Vendor and Company may negotiate a fee if Company is interested in directly hiring an Assigned Employee. However, nothing in this Agreement mandates that an Assigned Employee become a Direct Placement to the Company or End Client.

**Payment Terms, Bill Rates, and Fees**

7.  Company will pay Vendor for its performance at the rates set forth on Exhibit "A" in this Agreement.  Vendor will invoice Company for services provided under this Agreement on a monthly basis. Payment terms are net 30-days on receipt of invoice. Invoices not paid within 30 days from receipt of the invoice will be considered past-due. Past-due invoices will be charged a fee of 1.5% per month until paid. Invoices will be supported by signed time sheets or other agreed-upon documenting time worked by the Assigned Employees. Company signature or other agreed method of approval of the work time submitted for Assigned Employees certifies that the documented hours are correct and authorizes Vendor to bill Company for those hours.  If a portion of any invoice is disputed, Company will pay the undisputed portion upon receipt of the invoice.

8. Assigned Employees are presumed to be non-exempt from laws requiring premium pay for overtime (OT), holiday work, or weekend work. Vendor will only charge Company special rates for premium work time only when an Assigned Employee's work on assignment to Company, viewed by itself, would legally require premium pay and Company has authorized, directed, or allowed the Assigned Employee to work such premium work time, with prior written approval from Company.

**Confidential Information**

9. Both Parties may receive information that is proprietary or confidential to the other party or its affiliated companies and their clients. Both parties agree to hold such information in strict confidence and not to disclose such information to third parties or to use such information for any purpose whatsoever other than performing under this Agreement or as required by law. No knowledge, possession, or use of Company's confidential information will be imputed to Vendor as a result of Assigned Employees' access to such information.

**Cooperation**

10. The parties agree to cooperate fully and to provide assistance to the other party in the investigation and resolution of any complaints, claims, actions, or proceedings that may be brought by or that may involve Assigned Employees.

**Indemnification and Limitation of Liability**

11. To the maximum extent permitted by law, Vendor will defend, indemnify, and hold Company and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by Vendor's breach of this Agreement; its failure to discharge its duties and responsibilities set forth in Section 1; or the gross negligence, or willful misconduct of Vendor or Vendor's officers, employees, or authorized agents in the discharge of those duties and responsibilities.

12. To the extent permitted by law, Company will defend, indemnify, and hold Vendor and its parent, subsidiaries, directors, officers, agents, representatives, and employees harmless from all claims, losses, and liabilities (including reasonable attorneys' fees) to the extent caused by Company's breach of this Agreement; its failure to discharge its duties and responsibilities set forth in Section 2; or the negligence, gross negligence, or willful misconduct of Company or Company's officers, employees, or authorized agents in the discharge of those duties and responsibilities.

13. ALL WARRANTIES, CONDITIONS, REPRESENTATIONS, INDEMNITIES AND GUARANTEES, WHETHER EXPRESS OR IMPLIED, ARISING BY LAW, CUSTOM, PRIOR ORAL OR WRITTEN STATEMENTS BY STAFFING FIRM OR OTHERWISE (INCLUDING, BUT NOT LIMITED TO, ANY WARRANTY OF MERCHANT ABILITY OR FITNESS FOR PARTICULAR PURPOSE) ARE HEREBY OVERRIDDEN, EXCLUDED AND DISCLAIMED. STAFFING FIRM MAKES NO ASSURANCE AS TO THE RESULTS OF ITS SERVICES, AND STAFFING FIRM IS TO BE PAID FOR SERVICES RENDERED IRRESPECTIVE OF THE RESULTS OF SUCH SERVICES.

14. NEITHER PARTY SHALL BE LIABLE FOR OR BE REQUIRED TO INDEMNIFY THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL, EXEMPLARY, SPECIAL, PUNITIVE, OR LOST PROFIT DAMAGES THAT ARISE IN CONNECTION WITH THIS AGREEMENT, REGARDLESS OF THE FORM OF ACTION (WHETHER IN CONTRACT,

TORT, NEGLIGENCE, STRICT LIABILITY, OR OTHERWISE) AND REGARDLESS OF HOW CHARACTERIZED, EVEN IF SUCH PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

15. As a condition precedent to indemnification, the party seeking indemnification will inform the other party within five (5) business days after it receives notice of any claim, loss, liability, or demand for which it seeks indemnification from the other party; and the party seeking indemnification will cooperate in the investigation and defense of any such matter.

**Miscellaneous**

16. Provisions of this Agreement, which by their terms extend beyond the termination or nonrenewal of this Agreement, will remain effective after termination or nonrenewal.

17. No provision of this Agreement may be amended or waived unless agreed to in a writing signed by the parties.

18. Each provision of this Agreement will be considered severable, such that if any one provision or clause conflicts with existing or future applicable law or may not be given full effect because of such law, no other provision that can operate without the conflicting provision or clause will be affected.

19. This Agreement and the exhibits attached to it contain the entire understanding between the parties and supersede all prior agreements and understandings relating to the subject matter of the Agreement.

20. The provisions of this Agreement will inure to the benefit of and be binding on the parties and their respective representatives, successors, and assigns.

21. The failure of a party to enforce the provisions of this Agreement will not be interpreted as a waiver of any provision or the right of such party thereafter to enforce each and every provision of this Agreement.

22. Neither Party is permitted to transfer or assign this Agreement without the prior written consent from the other Party.

23. Any notice or other communication will be deemed to be properly given only when sent via the United States Postal Service or a nationally recognized courier, addressed as shown on the first page of this Agreement.

24. Neither party will be responsible for failure or delay in performance of this Agreement if the failure or delay is due to labor disputes, strikes, fire, riot, war, terrorism, acts of God, or any other causes beyond the control of the nonperforming party.

25. Termination of this Agreement shall not be effective with respect to any placed Assigned Employees until their placements are terminated.

**Term of Agreement**

26. This Agreement will be for a term of 12 months from the first date on which both parties have executed it. This Agreement may be terminated by either party upon 15 days' written notice to the other party, except that, if a party becomes bankrupt or insolvent, discontinues operations, or fails to make any payments as required by the Agreement, either party may

terminate the agreement upon 72 hours written notice. Unless the Agreement is cancelled or a renegotiation notice is sent 30 days prior to the Agreement's expiration date, the Agreement will be renewed automatically upon expiration for an additional 12-month term.

Authorized representatives of the parties have executed this Agreement below to express the parties' agreement to its terms.

| FRONTIERBPM, INC. | IT TRAILBLAZERS, LLC |
|---|---|
| *(signed)* Theodore Sak | |
| Signature | Signature |
| Theodore Sak | |
| Printed Name | Printed Name |
| President & CEO | |
| Title | Title |
| January 25, 2018 | |
| Date | Date |

# Exhibit A

**Rate Schedule**

| Job Title or Description | Location | Hourly Bill Rate ($) |
|---|---|---|
| **Pijush Lodh** | | |
| PEGA CSSA | FrontierBPM Delivery Center- 718 Arch Street | $80/hr |
| Reporting Manager: Jason Lavigne | | |
| | | Adjusted to holidays, |
| PO WILL BE PROVIDED | PROPOSED START DATE: 1-29-18 | PTO or other timeoff. |

**NOTE:** It is expected that the Assigned Employee will work full business days. If the Assigned Employee takes time off during a given day or month, then those hours not worked will be subtracted from the monthly flat rate defined above.

Additional Assigned Employees will be negotiated separately and added as addendums to this Agreement.

Direct Placement Fee:  Not mandatory.  This will be negotiated, if agreed upon by both Parties.

This Agreement will be for an initial term of 12 months from the first date on which both parties have executed it.  The Agreement or any applicable Purchase Order or Exhibit A may be terminated by either party upon 15 days' written notice to the other party.

FRONTIERBPM, INC.                                   IT TRAILBLAZERS, LLC

*Theodore Sak* (signature)

Signature                                                         Signature

Theodore Sak

Printed Name                                                Printed Name

President & CEO

Title                                                               Title

January 25, 2018

Date                                                               Date

# Exhibit B

**Assigned Employee Agreement and Waiver**

In consideration of my assignment to Company by Vendor, I agree that I am solely an employee of the Vendor for all purposes, including benefits plan purposes and that I am eligible only for such benefits as Vendor may offer to me as its employee. I further understand and agree that I am not eligible for or entitled to participate in or make any claim upon any benefit plan, policy, or practice offered by Company, its parents, affiliates, subsidiaries, or successors to any of their direct employees, regardless of the length of my assignment to Company by Vendor and regardless of whether I am held to be a common-law employee of Company for any purpose; and therefore, with full knowledge and understanding, I hereby expressly waive any claim or right that I may have, now or in the future, to such benefits and agree not to make any claim for such benefits.

| ASSIGNED EMPLOYEE | WITNESS |
|---|---|
| _____ | _____ |
| Signature | Signature |
| _____ | _____ |
| Printed Name | Printed Name |
| _____ | _____ |
| Date | Date |

# Exhibit C

**Additional Provisions (Valid Unless Crossed Out and Initialed by Company)**

**Reports**

At no additional cost to Company, Vendor will generate and deliver to Company the following reports, at the indicated intervals:  WEEKLY PROJECT STATUS REPORTS

**Background Checks**

At Vendor's expense, Vendor will perform the following types of background / qualification checks for all employees which it selects for assignment to Company and will not assign unqualified personnel to Company.  The following qualification checks will be performed:

- Civil & Criminal Records
- Social Security Number Verification
- Address History
- Terrorist Watch List (OFAC)

The results of the above background check results shall be provided to Company before the Assigned Employee begins work at the Company.

**Guarantee**

The Assigned Employees that the Vendor recruits and assigns to Company will have the qualifications that the Company requests, as interpreted by the Company. If Company finds any Assigned Employee's qualifications or general work-related behavior lacking and lets Vendor know within ten (10) business days of the assignment, Vendor will not charge Company for the first ten (10) days of the assignment and will make reasonable efforts to replace the Assigned Employee immediately.  However, Company is not obligated to accept any additional replacements.

**Insurance**

Vendor will cover Vendor's staffing operations for Company with at least the following types and limits of insurance or other coverage:

a. Workers' compensation benefits or coverage on the Assigned Employees, in amounts no less than required by law

b. Employer's liability insurance with limits of $ 1,000,000.00   .

c. Commercial general liability insurance, including personal injury, contractual liability, and property damage, with limits of $ 1,000,000.00   .

d. Commercial blanket bond insurance with limits of $ 1,000,000.00   .

**Minimum Hours Per Day**

The Company operates on an 8-hour work day ("Standard Work Day"), for all standard business days. The Assigned Employee is expected to work a Standard Work Day at all times, and Company will pay Vendor only for hours worked in a given month at the rate defined herein.

**Nature of Relationship**

The services that Vendor will render to Company under this Agreement will be as an independent contractor. Nothing contained in this Agreement will be construed to create a relationship of principal and agent, or employer and employee, between Vendor and Company.

**Headings**

The headings of the paragraphs of this Agreement are inserted solely for the convenience of reference. They will in no way define, limit, extend, or aid in the construction of the scope, extent, or intent of this Agreement.

**Contract Interpretation**

The rule of construction that ambiguities in an agreement are to be construed against the drafter will not be invoked or applied in any dispute regarding the meaning of any provision of this Agreement.

**Choice of Law**

This agreement will be governed by and construed in accordance with the laws of the state of Pennsylvania, without reference to any conflicts of law principles thereof.

**Assignment of Agreement**

Vendor shall not transfer or assign this Agreement without the written consent of Company, and any attempted assignment without such consent shall immediately terminate this Agreement.

**Responsibility for Training**

Should any Assigned Employee require additional or continuing education training specific to the technical discipline in which they are working for the Company, it is the sole responsibility of the Vendor or Assigned Employee for any costs that may be required. Additionally, all training will be completed outside normal business hours so as not to interfere with the work being performed by the Assigned Employee for the Company.

**Work Product**

It is understood that the Assigned Employee will be the sole person working on assignments assigned by the Company and agrees to not work with outside parties to complete this/her work. Additionally, all deliverables, data, results, products (interim and/or final), inventions, and discoveries, whether tangible or intangible, that are made, developed, perfected, designed, conceived or first reduced to practice by the Assigned Employee, either solely or jointly with others, in the course of performing work for the Company, and all intellectual property therein

("Work Product") shall be the sole and exclusive property of the Company, and Vendor and Assigned Employee hereby assigns all right, title, and interest in such Work Product to the Company. Vendor or Assigned Employee shall not, during or after this Agreement, be entitled to or claim any right, title or interest to such Work Product or any commission, fee, royalty or other direct or indirect benefit from the Company or its Affiliates with respect to such Work Product. Vendor, Vendor's Assigned Employees Provider's shall sign and deliver to the Company all writings and do all such things as may be necessary or appropriate to vest in the Company the rights granted hereunder and shall assist Company with any patent or other intellectual property filings with respect to Work Product, at Company's reasonable request.  Work Product shall not include any generally applicable knowledge, experience, expertise or know-how developed or acquired by Provider that does not rely upon the use of Confidential Information for its utility or effectiveness.