*NOT FOR PUBLICATION*

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|                          |   |                                |
|--------------------------|---|--------------------------------|
| IT Trailblazers LLC,     | : |                                |
|           Plaintiff,     | : | Civil Action No.: 18-14051 (FLW) |
|                          | : | **OPINION**                    |
|      vs.                 | : |                                |
| FrontierBPM, LLC         | : |                                |
|           Defendant.     | : |                                |

**WOLFSON, Chief Judge:**

Plaintiff IT Trailblazers LLC ("Plaintiff" or "Trailblazers") alleges, *inter alia*, that defendant FrontierBPM, LLC ("Defendant" or "Frontier"), breached a settlement agreement which the parties entered into in June 2018, following a business dispute. Plaintiff now moves for partial summary judgment on Count Two of the Complaint pursuant to Federal Rule of Civil Procedure 56. For the reasons set forth below, Plaintiff's motion is **GRANTED**.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In January 2017, the parties contracted for Plaintiff to provide staffing services to Defendant over a twelve-month term. *See* Compl., Ex. A. "General Staffing Agreement". Subsequently, the relationship between the parties deteriorated due to Frontier's dissatisfaction with the personnel Trailblazers provided, and Frontier ceased paying for Trailblazers' services. In June 2018, Plaintiff filed suit against Frontier, alleging breach of contract and seeking payment for outstanding invoices. Statement of Uncontested Facts ("Pl. Facts") ¶¶2-4. On June 28, 2018, within a few days of filing, that action was resolved via settlement agreement. *Id.* at ¶4; *see also* Declaration of Nani Ramanujam ("Ramanujam Decl.") Ex. B, Settlement Agreement. Per the

1

terms of the agreement, Trailblazers was entitled to a total of $521,207.33, under a payment schedule which provided for the amount due to be paid in full by September 18, 2018. *Id*. Furthermore, the parties continued their contractual arrangement and Trailblazers provided additional staffing services pursuant to the General Staffing Agreement that was in effect before the settlement. Pl. Facts ¶13. Frontier paid $70,000 of the total amount due under the settlement and then ceased making payments. *Id*. ¶14. Plaintiff filed the instant lawsuit on September 20, 2018, asserting breach of the settlement agreement and the General Staffing Agreement. Subsequently, Plaintiff filed the instant motion for summary judgment.

The parties largely dispute the sequence of events preceding the execution of the settlement agreement. According to Plaintiff, Plaintiff's counsel drafted the initial settlement agreement, which was sent to Frontier on June 20, 2018, and over the course of the next week, the parties engaged in additional negotiations regarding terms via email, and then the settlement agreement was signed. *Id*. at ¶¶6-10.

Defendant contends that the parties orally agreed that Frontier would pay the outstanding balance owed to Trailblazers, plus six-percent interest over an 18-month period, during which Frontier and Trailblazers would continue to maintain their business relationship. Def. Counterstatement of Facts ("Counterstatement") ¶24-26; *see also* Certification of Theodore Saks ("Saks Cert.") ¶¶25-26. However, when Frontier received the written settlement agreement from Trailblazers, it contained a number of additional provisions that had not been agreed upon. Counterstatement at ¶26; Saks Cert. at ¶27. Among them: that the amount due by Frontier was $372,520.76; that Frontier had no defenses or counterclaims; that $65,000 would be due immediately; and that in the event of breach, there would be a default interest rate of 18% plus late fees. Counterstatement at ¶26; Saks Cert. at ¶27. Frontier refused to sign the proffered agreement,

and Trailblazers allegedly promised Frontier it would extend the repayment period if Frontier made certain "good faith payments." Counterstatement at ¶27. While discussions were ongoing, Trailblazers allegedly filed suit against Frontier, without giving Frontier prior notice. *Id*.

Further, after filing the lawsuit, Trailblazers allegedly threatened to remove two "key employees." *Id*. at 32. Frontier avers that it was subsequently coerced into signing the settlement agreement because it was in the midst of raising capital and trying to retain new clients which it could not do without its key employees, and while also defending against the lawsuit. *Id*. In the instant motion, Plaintiff moves for summary judgment on Count Two of the Complaint which asserts a claim for breach of the settlement agreement, contending that it is entitled to $436, 701.06, plus prejudgment interest.

## II. <u>STANDARD OF REVIEW</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477

U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, (1986); *Curley v. Klem*, 298 F.3d 271, 276-77 (3d Cir. 2002).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "If the moving party will bear the burden of persuasion at trial, that party must support its motion with credible evidence . . . that would entitle it to a directed verdict if not controverted at trial." *Id.* at 331. On the other hand, if the burden of persuasion at trial would be on the nonmoving party, the party moving for summary judgment may satisfy Rule 56's burden of production by either (1) "submit[ting] affirmative evidence that negates an essential element of the nonmoving party's claim" or (2) demonstrating "that the nonmoving party's evidence is insufficient to establish an essential element of the nonmoving party's claim." *Id.* Once the movant adequately supports its motion pursuant to Rule 56(c), the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324; *see also Matsushita*, 475 U.S. at 586; *Ridgewood Bd. of Ed. v. Stokley*, 172 F.3d 238, 252 (3d Cir. 1999). In deciding the merits of a party's motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the factfinder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992).

There can be "no genuine issue as to any material fact," however, if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322-23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders

all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

**III.     ANALYSIS**

Plaintiff argues that Frontier's failure to tender the remaining settlement funds constitutes breach of the settlement agreement. In response, Defendant contends that summary judgment is premature because the case is still in the early phase of discovery as discovery responses were served in January 2019, and, at the time of the motion, no depositions had been taken. Def. Br. at 16-18. Defendant avers that further discovery will provide the following information relevant to its defenses, much of which is solely within Plaintiff's possession: "fleshing out and detailing misrepresentations made by Trailblazers," "the terms that Trailblazers had agreed upon prior to sending a written forbearance agreement to Frontier," "ascertaining and detailing representations made by Trailblazer as to additional time being afforded Frontier for payment if good faith payments were made," "showing that Trailblazers had knowledge of the dire financial circumstances in which Frontier found itself as a direct result of Trailblazer's breaches of contract and misrepresentations," "showing that Trailblazers knew that Frontier was attempting to raise capital," "ascertaining and detailing threats made by Trailblazers as to its removing two key personnel from Frontier projects." Def. Br. at 18; *see also* Saks Cert. ¶7. Furthermore, Defendant contends that it has raised affirmative defenses, such as, economic duress, estoppel, unclean hands, and the right of set off, which preclude the grant of summary judgment. Def. Br. 22-25.

Under New Jersey law, "[a]n agreement to settle litigation is 'governed by [the general] principles of contract law.'" *Globe Motor Co. v. Igdalev*, 225 N.J. 469, 482 (2016)(alteration in original); *see also Excelsior Ins. Co. v. Pennsbury Pain Ctr*., 975 F. Supp. 342, 348-49 (D.N.J. 1996) (explaining that federal court settlement agreements are governed by New Jersey contract

5

law). To prevail on a breach of contract claim under New Jersey law, a plaintiff must establish three elements: "(1) the existence of a valid contract between the parties; (2) failure of the defendant to perform its obligations under the contract; and (3) a causal relationship between the breach and the plaintiff's alleged damages." *Sheet Metal Workers Int'l Ass'n Local Union No. 27, AFL-CIO v. E.P. Donnelly*, Inc., 737 F.3d 879, 900 (3d Cir. 2013).

Here, Plaintiff has established the second and third elements of the claim. That is, Defendant acknowledges that it only paid $70,000 of the amount due under the settlement, thus it did not fully perform its obligations under the agreement. Furthermore, a causal relationship exists between the damages Plaintiff seeks and Defendant's breach, as the damages sought are simply the outstanding amount due under the settlement agreement. However, as to the first element, Defendant contends that the settlement agreement can not constitute a valid contract because it was procured under economic duress. In support of its economic duress argument, Defendant argues that it was without counsel at the time of the lawsuit, and that it had "no choice but to settle suit on egregious terms that were advantageous to Trailblazers" because of the company's precarious financial position at the time. Def. Br. at 12. Defendant alleges that at the time of the prior lawsuit it was in the process of raising venture capital and litigating the lawsuit would "materially jeopardize if not destroy Frontier's money-raising efforts." *Id*.

Under New Jersey law, "the party alleging economic duress must show that [it] has been the victim of a wrongful or unlawful act or threat, and [s]uch act or threat must be one which deprives the victim of [its] unfettered will." *Cont'l Bank of Pa. v. Barclay Riding Acad., Inc.,* 459 A.2d 1163, 1175(N.J. 1983)(quoting 3 Samuel Williston, *A Treatise on the Law of Contracts* § 1617, at 704 (3d ed. 1970)). "Merely taking advantage of another's financial difficulty is not duress." *Id.* at 1163. Nor is simply having the upper hand in negotiations. *Windsor Card Shops, Inc.*

*v. Hallmark Cards, Inc.,* 957 F. Supp. 562, 570 (D.N.J. 1997) (finding no economic duress in debt negotiation even though a creditor may have the "upper hand"). Rather, to establish economic duress, one's financial difficulty must have been "contributed to or caused by the one accused of coercion." *Id*. at 1176. The "decisive factor" in determining whether a contract has been signed under economic duress is the "wrongfulness of the pressure exerted." *Campbell Soup Co. v. Desatnick,* 58 F. Supp.2d 477, 492 (D.N.J.1999) (citing *Cont'l Bank,* 459 A.2d at 1175).

Taking Defendant's version of events as true, the Court finds that Defendant has failed to prove its affirmative defense of duress. *See Roberts v. Rich Foods, Inc.*, 139 N.J. 365, 378 (1995) (stating that defendant bears the burden of proving affirmative defenses in civil case). Defendant's proffered reasons do not sufficiently show that Plaintiff performed a "wrongful or unlawful" act that deprived Defendant of its "unfettered will." Defendant alleges that the parties orally agreed to a settlement, then Plaintiff acted wrongfully by changing the terms, filing a lawsuit, and threatening to remove key personnel when Plaintiff refused to sign the revised agreement. Def. Br. at 10. However, neither the threat of litigation, nor Plaintiff's threat of removing its personnel from Frontier's projects constitute a wrongful act sufficient to invalidate the agreement. The additional economic pressure of defending against the pending lawsuit undoubtably played a role in Frontier's decision to settle the case, but, it is well recognized that "a threat to bring a civil action or to resort to remedies available under a contract is not such duress as will justify rescission of a transaction." *Warner-Lambert Pharm. Co. v. Sylk,* 471 F.2d 1137, 1144 n. 24 (3d Cir. 1972)(quoting Williston, *supra*, § 1617 at 704)); *see also Great Bay Hotel & Casino, Inc. v. Tose*, No. 91-600, 1991 WL 639131, at *7 (D.N.J. Dec. 16, 1991) ("it is the established rule that it is not duress to institute or threaten to institute civil suits, or take proceedings in court, or for any person to declare that he intends to use the courts")(internal quotation marks and citation omitted).

Furthermore, under the circumstances, Plaintiff was permitted to terminate the General Staffing Agreement and consequently, withdraw its employees. The General Staffing Agreement permitted Trailblazers to terminate the contractual arrangement, with 72 hours' notice, if Frontier failed to make any payments as required. *See* General Staffing Agreement, ¶26. Trailblazers does not deny that at the time filing, in June 2018, it had several unpaid invoices. Counterstatement ¶23. Accordingly, Plaintiff's threat to enforce it's right of termination cannot constitute a wrongful coercive act. *See Garshman v. Universal Res. Holding, Inc.*, 641 F. Supp. 1359, 1372–73 (D.N.J. 1986), aff'd 824 F.2d 223 (3d Cir. 1987) (finding no duress when party threatened to exercise rights under contract).

Although Plaintiff likely had the upper hand at the time of the settlement negotiations, Defendant had the ability to make an informed decision whether to accept the settlement, and the proposed payment schedule, or proceed with the pending lawsuit. While Defendant was experiencing financial difficulty, it is unlikely that Defendant's financial circumstances were so precarious that it was wholly unable to litigate the lawsuit, particularly since Defendant's position is that it had viable defenses to the underlying lawsuit and it was not responsible for the outstanding invoices because the personnel which Trailblazers supplied were incompetent, inexperienced and inadequately trained, all of which negatively impacted Frontier's business. Def. Br. at 4-8; *see* Saks Cert ¶25 ("Frontier could – and should – taken the position that [Trailblazers] was owed nothing because of its material breaches of the Agreement."). Rather than raising those arguments, attempting to offset Plaintiff's alleged damages, and risking judicial adjudication of its defenses, Defendant made the calculated decision to settle the case, and continue receiving the benefit of Trailblazer's staffing services.

Defendant's reliance on the doctrine of unclean hands is similarly insufficient to preclude the grant of summary judgment. The doctrine of unclean hands precludes equitable relief "when the party seeking relief is guilty of fraud, unconscionable conduct, or bad faith directly related to the matter at issue that injures the other party and affects the balance of equities." *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 147 n. 12 (3d Cir.1999). Application of unclean hands rests within the sound discretion of the trial court. *In re New Valley Corp.*, 181 F.3d 517, 525 (3d Cir. 1999). To succeed on an unclean hands defense, defendant must establish that the plaintiff "conducted [itself] as to shock the moral sensibilities of the judge." *Gaudiosi v. Mellon,* 269 F.2d 873, 882 (3d Cir. 1959). The Third Circuit Court of Appeals has established that the conduct must suggest "fraud, unconscionability, or bad faith on the part of the Plaintiff." *S & R Corp. v. Jiffy Lube Int'l, Inc.*, 968 F.2d 371, 377 (3d Cir. 1992). The Court is not convinced, even when the evidence is viewed in the light most favorable to Defendant, that Plaintiff's alleged misconduct constitutes unclean hands – for the same reasons it does not constitute economic duress.

Defendant also contends that Plaintiff is equitably estopped from enforcing the settlement agreement. "Estoppel is an equitable doctrine invoked to avoid injustice in particular cases." *Heckler v. Community Health Servs.*, 467 U.S. 51, 59 (1984). To establish equitable estoppel, a party must show "(1) a representation or misrepresentation, (2) made with knowledge by the representor that it would induce action, and (3) a detrimental reliance on the representation by the claimant." *La. Counseling & Family Servs., Inc. v. Makrygialos, LLC*, 543 F. Supp. 2d 359, 367 (D.N.J. 2008); *see also Knorr v. Smeal*, 836 A.2d 794, 799 (N.J. 2003) ("to establish equitable estoppel, plaintiffs must show that defendant engaged in conduct, either intentionally or under circumstances that induced reliance, and that plaintiffs acted or changed their position to their detriment."). New Jersey law requires both "justified

9

and reasonable reliance" to establish equitable estoppel. *Cipolla v. Inst. for Psychoanalytic Psychotherapies*, 33 F. App'x 617, 620 (3d Cir. 2002). A party's reliance is reasonable if "the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading." *Heckler,* 467 U.S. at 59.

Defendant argues that Plaintiff represented during settlement negotiations that it would allow Defendant additional time to make the outstanding payments, and Defendant detrimentally relied on that misrepresentation; thus Plaintiff is equitably estopped from enforcing the Settlement Agreement.

Defendant cannot establish that its reliance on Plaintiff's alleged promise to modify the payment schedule was reasonable. The Settlement Agreement contains an integration clause, which provides "[t]his Settlement Agreement sets forth all of the promises, covenants, agreements, conditions and understanding by and among the parties hereto with respect to the subject matter thereof. Except as otherwise provided herein, this Settlement Agreement supersedes all prior understandings, inducements or conditions contained or referred to herein." Thus, the Settlement Agreement expressly disclaimed all prior promises. In the face of such an express disclaimer, Defendant could not reasonably rely on Plaintiff's promises to provide additional time beyond that provided by the Agreement's clear terms. *See Jackson Hewitt Inc. v. Childress,* No. 06–0909, 2008 WL 834386, at *32 (D.N.J. Mar. 21, 2008) (finding Defendant's reliance on Plaintiff's prior representation unreasonable where the agreement at issue contained an integration clause). Accordingly, Defendant's equitable estoppel defense fails as a matter of law.

Since each of Defendant's affirmative defenses are unavailing, the lack of substantial discovery does not preclude the grant of summary judgment. Accordingly, the Court **GRANTS** summary judgment in favor of Plaintiff on its claims for breach of the settlement agreement, in the amount

of $436,701.06, the outstanding amount due under the settlement agreement, plus prejudgment interest running from September 18, 2018.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion for Summary Judgment is **GRANTED**.

Date: July 22, 2019

/s/ Freda L. Wolfson  
Hon. Freda L. Wolfson  
U.S. Chief District Judge